# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SHERRY A. WILEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action Number |
| **vs.** ) | **2:20-cv-00198-AKK** |
| ) | |
| **V.A. of BIRMINGHAM, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Sherry A. Wiley, proceeding *pro se*, commenced this action against the V.A. of Birmingham, the Birmingham Police Department, and many other defendants,[1] alleging that the defendants violated her civil rights, her rights under HIPAA, and various state laws by, among other things, trying to coerce Wiley into having a physical exam and refusing to accept Wiley's police reports. *See* docs. 1; 3. Based on her allegations, Wiley asserts claims for monetary damages against the defendants and seeks declaratory and injunctive relief. *See* doc. 3 at 24.

---

[1] The Amended Complaint names the following defendants: the V.A. of Birmingham and fifteen of its employees, Birmingham Headquarters and Police Department, Birmingham Housing Authority (properly identified as the Housing Authority of the Birmingham District), Birmingham Water Company (properly identified as the Birmingham Water Works Board), Alabama Power, Priority Veterans, Lula Skowronek, Devin Young, and the Federal Bureau of Investigation—Birmingham. Doc. 3 at 1.

This action is before the court on Wiley's motion for leave to proceed *in forma pauperis*, doc. 2, motion for appointment of counsel, doc. 4, and motion to add defendants to her complaint, doc. 5. As an initial matter, Wiley's motion for leave to proceed *in forma pauperis*, doc. 2, is due to be granted to the extent Wiley seeks to commence this action without prepayment of fees. But, because "[g]enerally, there is no constitutional right to 'effective assistance of counsel' in civil cases,'" *U.S. v. Wade*, 291 F. Supp. 2d 1314, 1316 (M.D. Fla. 2003) (quoting *Mekdeci v. Merrell Nat'l Laboratories*, 711 F.2d 1510, 1522-23 (11th Cir. 1983)), Wiley's request for appointment of counsel, docs. 2; 4, is due to be denied.

Next, district courts must dismiss the complaint of any plaintiff proceeding *in forma pauperis* if the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citation omitted).

As explained below, while Wiley may have valid grievances against multiple individuals or entities, none of the grievances Wiley identifies in her Complaint implicates a right under the Constitution. Therefore, her claims are due to be dismissed without prejudice.

## I.

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that allegations in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). And, Rule 10 requires a plaintiffs to state her claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "These rules work together 'to require the pleader to present [her] claims discretely and succinctly, so that [her] adversary can discern what [s]he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (quotation omitted). And, Rule 12(b)(6) permits dismissal of a complaint for failing to failing to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), dismissal is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). When determining if a complaint states a plausible claim for relief, the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff," *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016), but the court is "not bound to

accept as true a legal conclusion couched as a factual allegation," *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (citing Iqbal, 556 U.S. at 678). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Additionally, because Wiley is proceeding *pro se*, the court must construe her complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

## II.

Turning to the specifics here, Wiley, an honorably-discharged veteran, alleges that before she moved to Birmingham, Alabama from Hawaii, she spoke with Lula Skowronek of Priority Veteran,[2] who informed her that Priority Veteran would temporarily place Wiley in a shelter until her Section 8 housing voucher transferred to Birmingham. Doc. 3 at 5. But, according to Wiley, when she arrived in Birmingham, Skowronek told her the Veterans Administration would house her instead of Priority Veteran, and a Housing Authority of the Birmingham District

---

[2] Priority Veteran is a partnership with the United Way of Central Alabama that serves military veterans who are homeless or at immediate risk of becoming homeless, and it was created through a grant from the U.S. Department of Veterans Affairs. *See* http://priorityveteran.org/about-us.

4

("HABD") employee then failed to process Wiley's paperwork for a Section 8 voucher. *Id.* at 5-6. Wiley spent her first four days in Birmingham in a shelter, and when she returned to a VA facility to meet with a case manager for the VA-HUD Veterans Affairs Supportive Housing ("VASH") program, VA medical staff allegedly wrongfully observed Wiley in a waiting room. *Id.* at 6-7. Wiley further alleges that the HABD conspired with Skowronek and VA employees to try to coerce Wiley into undergoing a physical examination in order to be placed in the VASH program even though a physical is not necessary for the program, and Wiley was homeless for approximately a month after she refused to submit to a physical.[3] *See id.* at 6-8.

Priority Veteran eventually placed Wiley in inadequate, dirty, and unsafe housing while she waited for a Section 8 housing voucher, and it dropped Wiley from its services when she moved to a new apartment approximately three months later. *Id.* at 8-10. Wiley's new apartment also proved inadequate, and she reported many issues to HABD, and also reported harassment she experienced from her neighbors and the building's maintenance man to HABD and Dr. Sher Kannar, the owner of her apartment.[4] *Id.* at 10-13.

---

[3] According to Wiley, the VA in Birmingham tried to force her to have a physical exam in order to "manipulate the outcome" of a case Wiley had previously filed in the District of Hawaii. Doc. 3 at 6.

[4] Wiley seeks to add her neighbor, Ted Bishop, Dr. Kannar, and Dr. Kannar's maintenance man as defendants to this action. Doc. 5.

According to Wiley, she has been the victim of repeated attempted break-ins, theft, harassment, and stalking since moving to her new apartment, and her housing stipend checks from HABD arrive open in the mail each month. *Id.* at 14-17. And, allegedly, Birmingham police officers refused to take Wiley's reports regarding those incidents, but yet took false reports from Wiley's neighbors about her. *Id.* Wiley also contends that the Internal Affairs Department would not take her complaint or give Wiley a copy of her neighbors' reports against her, and that agents at the FBI's Birmingham office would not open a case regarding her complaints. *See id.* at 17-20.

Finally, Wiley alleges that Birmingham Water Works supplied dirty, acidic water to her apartment, and that her water bills were "extremely unusual" and higher than they should have been. *Id.* at 20. And, Alabama Power allegedly wrongfully turned off Wiley's power on three occasions, then denied that any interruption had occurred in Wiley's service. *Id.* at 20-22. Neither Birmingham Water Works nor Alabama Power would allow Wiley to speak with an upper manager regarding these issues. *Id.*

### III.

The court recognizes that Wiley is representing herself. Still, she is expected to abide by the same rules as any other litigant. As explained below, her complaint has several flaws that warrant dismissal of this lawsuit. Wiley is free to refile her

claims in this court if she can plead adequate federal claims, or to pursue her non-federal claims in state court.

### A.

The Amended Complaint fails to provide a short and plain statement of Wiley's claims as required by Rule 8, and fails to state Wiley's claims separately in numbered paragraphs as required by Rule 10. *See* doc. 3. Instead, the Complaint lists Wiley's claims in the case caption on the first page without identifying which claims are asserted against which defendants, and it consists of twenty-four pages of allegations that are largely conclusory and speculative, including allegations related to a case Wiley previously filed in the District of Hawaii. *Id.* The Amended Complaint also does not identify which alleged facts support each claim listed in the caption. *See id.* In other words, the court and defendants must guess which claims are asserted against each defendant and which allegations support Wiley's different claims for relief. As a result, the Amended Complaint is due to be dismissed for failing to satisfy Rule 8. *See Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

### B.

In addition, the Amended Complaint, even construed liberally, fails to state a plausible federal claim, which is required for the court to exercise jurisdiction over this dispute involving a plaintiff who is a citizen of Alabama and defendants from

Alabama.[5]  The Amended Complaint identifies Wiley's claims as: "Civil Rights Violation, HIPAA Rights Violation, Identify Theft, Abuse of Power, Human Trafficking, Harassment, Stalking, Invasion of Privacy (audio/video illegally in [Wiley's] home), Slander, Libel, Actions Preventing [Wiley's] human rights to start a business, Defamation/Alienation, Negligence and Collusion, Medical Malpractice and medical manipulation." Doc. 3 at 1.  But, "there is no private right of action for a violation of HIPAA's confidentiality provisions," meaning that Wiley cannot file a lawsuit for such an alleged violation.  *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809-10 (11th Cir. 2011) (citing *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)); *see also* 42 U.S.C. § 1320d-5(a)(1).  And, while Wiley's identity theft and human trafficking claims implicate federal criminal laws, no private right of action exists to enforce those laws, and, again, that means Wiley cannot file a lawsuit to seek redress for these violations.  Moreover, to the extent that Wiley may assert claims against VA employees in their official capacities under the Federal Tort Claims Act ("FTCA"), the court cannot exercise jurisdiction over the claims because Wiley has not alleged any facts to suggest that she first exhausted her administrative

---

[5] Wiley contends that the court can exercise jurisdiction over this action on the basis of federal question jurisdiction and because the United States is a party, and she does not allege the existence of diversity jurisdiction.  *See* docs. 1 at 5; 3.

remedies as required by the FTCA.[6]  *See* 28 U.S.C. § 2675(a); *McNeill v. United States*, 508 U.S. 106, 113 (1993).

Turning to Wiley's claims for alleged civil rights violations, Wiley seems to assert claims against the defendants under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  To state a plausible claim under § 1983, a plaintiff must allege "(1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors."  *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (citations omitted).  And, to state a claim under *Bivens*, a plaintiff must allege facts showing a violation of her constitutional rights committed by a Federal Government official "'through the official's own individual actions . . . .'"  *Stevens v. Osuna*, 877 F.3d 1293, 1309 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 676) (emphasis in original omitted).

**1.**

Wiley's § 1983 claims against Alabama Power, Priority Veteran, Lula Skowronek, and Devin Young fail as a matter of law because these defendants are private individuals or entities.[7]  "Only in rare circumstances can a private party be

---

[6] In addition, the FTCA does not waive a federal official's immunity for claims arising out of "libel, slander, misrepresentation, deceit, or interference with contract rights . . . ."  28 U.S.C. § 2680(h).

[7] *See Turner v. Alabama Power Co.*, Case No. , 2015 WL 873316, at *4 (N.D. Ala. Feb 27, 2015) ("'Alabama Power is a private, investor owned utility company,' and "is not engaged in state action

9

viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 241 F.3d 1341, 1347 (11th Cir. 1992). This entails showing that: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution []; (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State []; or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise []." *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quotation omitted). Wiley has not alleged facts indicating that any of these three tests have been satisfied with respect to the alleged actions of Alabama Power, Priority Veteran, Skowronek, and Young. *See* doc. 3. As a result, Wiley's claims against these defendants for alleged civil rights violations are due to be dismissed.[8]

## 2.

As to Wiley's civil rights claims against the governmental defendants—the VA and its employees, the HABD, the Birmingham Police Department, the FBI, and

---

'simply because it is engaged in a Government-regulated business.'") (quoting *McNeely v. Crosswhite*, 2014 WL 6903897, *3 (N.D. Ala. Dec. 8, 2014); *Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1250 (11th Cir. 1985)).

[8] The defendants Wiley seeks to add to the Amended Complaint—Dr. Sher Kannar, who owns her apartment building; Thomas, Dr. Kannar's maintenance man, and Ted Bishop, a neighbor—are private citizens, and Wiley does not allege any facts to suggest they may be considered state actors. *See* docs. 3; 5. Thus, Wiley does not state plausible claims against these three individuals for civil rights violations.

the Birmingham Water Works[9]—Wiley has not plausibly alleged that any of these defendants violated her constitutional rights.  First, Wiley alleges that the VA and HABD wrongfully observed her in the waiting room or conference room of a VA facility.  However, such behavior would not violate Wiley's Fourth Amendment rights, or her right to privacy, because Wiley does not have an objectively reasonable expectation of privacy in a public waiting room.  And, even assuming Wiley may plausibly allege a HIPAA violation, HIPAA does not create "rights that are enforceable through § 1983." *Sneed v. Pan American Hospital*, 370 F. App'x 47, 50 (11th Cir. 2010).

Second, to the extent that Wiley asserts a § 1983 or *Bivens* claims for an alleged violation of her right to due process based on HABD's alleged failure to timely process her Section 8 paperwork, Wiley has not alleged a deprivation of a constitutionally-protected property interest.[10]  Indeed, Wiley does not allege that HABD ever terminated her benefits under Section 8, but alleges that she still receives

---

[9] The Birmingham Water Works Board "is a public corporation created under Alabama Code § 11-50-230, et seq." *Scruggs v. Water Works Bd. of the City of Birmingham*, 2014 WL 5325750, at *6 (N.D. Ala. Oct. 20, 2014) (citing *Water Works and Sewer Bd. of the City of Birmingham v. Shelby Cnty.*, 624 So. 2d 1047, 1048 (Ala. 1993)).

[10] To plead a plausible civil rights claim for an alleged violation of a right to due process, a plaintiffs must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted).

a benefits check from HABD in the mail every month, albeit in an open envelope tampered with by the HABD or one of her neighbors.  *See* doc. 3 at 15.

Third, the alleged failure of the Birmingham Police Department and the FBI to accept or investigate Wiley's reports is not a violation of Wiley's constitutional rights.  The Constitution does not give any of us an explicit right to file complaints with law enforcement.  While we all expect and want these agencies to take our complaints seriously, their failure to do so does not implicate the Constitution.

Finally, the alleged issues regarding Wiley's water service and her bills from the Birmingham Water Works Board do not violate Wiley's constitutional rights.  These are private contractual matters Wiley may pursue in state court if she is so inclined.

To summarize, because Wiley has not alleged a violation of her constitutional rights, her § 1983 and *Bivens* claims for alleged civil rights violations are due to be dismissed.

## IV.

When a more carefully drafted complaint might state a claim, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quotation omitted).  But, a court may properly dismiss a *pro se* complaint if "a more carefully drafted complaint could not state a claim."

*Id.*  In this case, Wiley has already amended her complaint once, doc. 3, and she seeks leave to amend her complaint again, doc. 5.  But, Wiley's Amended Complaint still fails to state a plausible claim for relief under Federal law, and Wiley's proposed addition of new defendants does not save her claims.  In addition, giving Wiley an opportunity to amend her claims would be futile because the deficiencies in Wiley's federal claims could not be cured by a more carefully drafted complaint.  Thus, the court will dismiss Wiley's federal claims without prejudice without giving her another chance to amend her complaint.

Finally, "federal courts are courts of limited jurisdiction," *U.S. v. Rivera*, 613 F.3d 1046, 1049 (11th Cir. 2010), and the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial," *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (citation omitted).  Thus, in light of Wiley's failure to plead a plausible federal claim, the court declines to exercise supplemental jurisdiction over Wiley's state law claims, *see* 28 U.S.C. § 1367(c), and this action is due to be dismissed without prejudice.  A separate order will be issued.

**DONE** the 29th day of April, 2020.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE